# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| GINA ALLENDE, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>THE RECEIVABLE MANAGEMENT SERVICES LLC,<br><br>        Defendant. | Case No.: 18-cv-1377<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Gina Allende is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family, or household purposes.

5. Defendant The Receivable Management Services LLC ("RMS") is a foreign limited liability corporation with its principal offices located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6. RMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others and incurred for personal, family, or household purposes.

7. RMS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes

8. RMS is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions (the "DFI") pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

9. RMS is a debt collector as defined by 15 U.S.C. § 1692a.

## FACTS

10. On or about October 25, 2017, RMS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Progressive Universal Ins" ("Progressive"). A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt referenced by Exhibit A was incurred for personal, family, or household purposes. Investigation by counsel has determined that the alleged debt was likely incurred for insurance on Plaintiff's personal vehicle.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted in part by computer and in part by hand.

13. Upon information and belief, Exhibit A is a form debt collection letter used by RMS to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A is a "debt validation letter," used by Defendant to verify debts upon receiving notice that the consumer disputes the validity of the debt.

2

15. <u>Exhibit A</u> states:

Recently you requested information to support the creditor's request for payment of this account. Enclosed is the necessary information for you to identify the account.

<u>Exhibit A</u>.

16. The header in <u>Exhibit A</u> also contains the following account information:

```
Re:   Progressive Universal Ins
      Amt:         $172.97
      Claim No:              458975158-PZ
      Ref. No.:    905193994
```

<u>Exhibit A</u>.

17. The header in <u>Exhibit A</u> states that the letter was being mailed "Re:" Progressive, and that the "Amt" of the debt was $172.97.

18. The header in <u>Exhibit A</u> further states that the debt is associated with a "Claim No." ending in 5158-PZ and "Ref. No." ending in 3994.

19. The attached page in <u>Exhibit A</u> states:

Date – October 25, 2017

**Creditor – Progressive Universal Ins**

**Insured – GINA ALLENDE**

822 W SCOTT ST

MILWAUKEE, WI 532042356

3

Policy Number – 905193994

Policy Effective Date –2/27/2015

Policy Cancellation Date – 4/20/2015

Premium Balance Owed – $172.97

Exhibit A.

20. The attached page in Exhibit A states that the debt is associated with a "Policy Number" ending in 3994, and that the "Premium Balance Owed" is $172.97.

21. On its face, Exhibit A is confusing and misleading as to the character and legal status of the debt.

22. The header in Exhibit A states that the debt is allegedly associated with the Progressive "Claim No." ending in 5158-PZ but the attached page states that the debt is actually a "Premium Balance Owed."

23. The unsophisticated consumer would understand a debt associated with an insurer's specific "Claim No." to mean that the debt is, in fact, associated with an insurance claim.

24. In the context of insurance debts, referring to an insurer's "Claim Number" has a commonly understood meaning that suggests the debt is associated with a specific occurrence. *See, e.g., Deakins v. T.S. Pack*, 2012 U.S. Dist. LEXIS 9409, at *53-54 (S.D. W. Va. Jan. 25, 2012) (finding the term "insurance claim" is not overly vague or ambiguous and granting motion to compel Plaintiff to answer interrogatory).

25. Because the term "claim" has a specific meaning in the context of insurance debts, the unsophisticated consumer may understand the reference to the debt's "Claim No." to mean that someone else had filed a claim against her insurer, and the insurer is seeking

4

indemnification or subrogation from the consumer. *See generally, e.g., Employers Health Ins. V. General Casualty Co.*, 469 N.W.2d 172 (Wis. 1991).

26. The false representation that a debt is subject to subrogation or indemnification rights is material to the consumer. *See, e.g., Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 471-72 (7th Cir. 2000).

27. Further, the unsophisticated consumer may also understand the reference to the debt's "Claim No." to mean that the obligation came into being as a result of an automobile accident and the fact that, having reimbursed the consumer for the damage to her vehicle, the insurer was attempting to enforce an equitable right to recoup its payment from any funds the consumer might have received from the other driver's insurance company for the same damage. *E.g., Rodolakis v. Safety Ins. Co.*, 2018 U.S. Dist. LEXIS 140430, at *4 (D. Mass. Aug. 17, 2018) (discussing such debt collection activity and observing that it is not governed by the FDCPA).

28. Upon information and belief, the debt referenced in <u>Exhibit A</u> was not, in fact, associated with any insurer's claim. Instead, counsel's investigation has determined the debt was likely the result of unpaid insurance premiums that Plaintiff allegedly still owed the insurer, and the "Claim No" referenced in <u>Exhibit A</u> was assigned by RMS.

29. The reference to a "Claim No" in <u>Exhibit A</u> is especially confusing and misleading because it is assigned by RMS; as a result, the consumer would be completely unfamiliar with the "Claim No."

30. The reference to a "Claim No" in <u>Exhibit A</u> is intimidating and unfair; RMS could just as easily call this number the "RMS Account Number" or something that similarly would

5

not mislead the unsophisticated consumer to believe the debt was associated with an insurance claim.

31. Upon information and belief, RMS mailed Plaintiff an initial collection letter sometime prior to the mailing of <u>Exhibit A</u> to attempt to collect the same alleged debt referenced in <u>Exhibit A</u>.

32. Upon information and belief, the initial collection letter RMS mailed also referenced the alleged debt's "Claim No" but did not contain any reference whatsoever to any "Premium Balance Owed."

33. Upon information and belief, RMS uses the term "Claim No" with the specific purpose of confusing and misleading consumers about the character and legal status of the debt.

34. Further, the reverse side of <u>Exhibit A</u> also contains "IMPORTANT INFORMATION" in the form of various state-required disclosures.

35. <u>Exhibit A</u> states that RMS is "required under state law to give you the following notices," and informs the consumer that some of these notices "refer to rights you also have under federal law."

36. <u>Exhibit A</u> further provides a "California" notice, a "Colorado (consumers only)" notice, and a "Massachusetts" notice.

37. The "California" notice states:

| California | The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov. |

6

38. The Colorado notice states:

> **Colorado (consumers only)** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

39. The Massachusetts notice states:

> **Massachusetts** Massachusetts requires us to give the following notice, however, all consumers have these or similar rights under federal law: NOTICE OF IMPORTANT RIGHTS:
> YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.
>
> Please contact us at the address noted on the front of this form.
> Office Hours: 8:00 a.m. - 5:00 p.m. EST. Monday through Friday.

40. The California notice expressly informs the consumer that the referenced rights fall under both "[t]he state Rosenthal Fair Debt Collection Practices Act **and the federal Fair Debt Collection Practices Act**."

41. The Massachusetts notice expressly informs the consumer that "Massachusetts requires us to give the following notice, however, **all consumers have these or similar rights under federal law**[.]"

42. Hence, <u>Exhibit A</u> expressly informs consumers that federal law entitles them to the rights referenced in the California and Massachusetts notice, or to similar rights.

43. In contrast, the Colorado notice does not similarly reference "the federal Fair Debt Collection Practices Act" or state that the consumer would be entitled to "these or similar rights under federal law."

44. Instead, the Colorado notice references only "THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT."

7

45. The Colorado notice states that the consumer can "request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt."

46. In fact, the FDCPA, 15 U.S.C. § 1692c(c), states:

> (c) Ceasing Communication. If a consumer notifies a debt collector in writing . . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate with the consumer with respect to such debt," with certain enumerated exceptions.

47. Thus, like the Massachusetts and California notices, the Colorado notice also refers to rights that consumers have under federal law.

48. Several District Courts have held that the Colorado notice refers to rights that consumers also have under the FDCPA. *E.g., Borcherding-Ditloff v. Transworld Sys.*, 58 F. Supp. 2d 1006, 1009-10 (W.D. 1999); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1138-39 (N.D. Ill. 1998).

49. In *Borcherding-Ditloff*, 58 F. Supp. 2d at 1009-10, and *Jenkins*, 999 F. Supp. at 1138-39, the district courts concluded that the debt collector confused and misled consumers by including a "Colorado" notice virtually identical to the Colorado notice that RMS provided without explaining that consumers in Wisconsin and Illinois had similar rights to those referenced in the Colorado notice.

50. In *White v. Goodman*, No. 97 C 7078, 41 F. Supp. 2d 794, 797-98 (N.D. Ill. 1998), the District Court likewise found that "the Colorado rights are marginally different from federal rights," but held that the debt collector did not violate the FDCPA because the debt

collector letter expressly notified the consumer that "Colorado law required the creditor to notify the debtor of those rights, rather just stating that Colorado residents had certain rights."

51. The Seventh Circuit affirmed the district court's decision in *White*, 41 F. Supp. 794. *White v. Goodman*, 200 F.3d 1016 (7th Cir. 2000):

> The argument is, rather, that it implies that nonresidents of Colorado do not have similar rights, whereas in fact the Fair Debt Collection Practices Act itself confers similar rights on debtors. 15 U.S.C. § 1692c(c). In other words, the reader of the paragraph is assumed to react by saying to himself, "Since I'm not a resident of Colorado, I guess I have no right to limit further communications from this pesky debt collector." This is fantastic conjecture. Since the Fair Debt Collection Practices Act does not require that a copy or summary of it be furnished with every (or any) dunning letter, it is unlikely, to say the least, that recipients of such letters, unless they happen to be class action lawyers specializing in consumer finance litigation, have any idea of what specific federal or state rights they might have; so they have no benchmark against which to compare the rights that Colorado law confers. And far from implying that Coloradans have superior rights, the paragraph by its opening sentence makes clear that Colorado merely requires that the debt collector furnish Colorado residents with the specified information. The implication is not that such residents have more rights than residents of other states, but, at most, that they are less sophisticated and therefore need more information about their rights. Realistically, the only reaction of a Colorado nonresident to the paragraph would be that it had nothing to do with him.

*White*, 200 F.3d at 1020.

52. Exhibit A includes a notice that "some of" the state notices "refer to rights you also have under federal law."

53. However, Exhibit A implies to the unsophisticated consumer that she does not have the rights referenced in the Colorado notice because it expressly states that the California and Massachusetts notices referred to rights under "the federal Fair Debt Collection Practices Act" (California notice) and "federal law" (Massachusetts notice), but its Colorado notice did not reference federal law.

54. Unlike the letter in *White*, 200 F.3d at 1020, Exhibit A clearly indicates to the unsophisticated consumer that the notices that refer to rights they also have under federal law are the California and Massachusetts notices, and the clear implication is that federal law does not provide rights similar to those referenced in the Colorado notice.

55. Upon information and belief, RMS intentionally misleads consumers by referencing their rights under federal law with respect to the California and Massachusetts notices but remaining silent with respect to their rights under federal law with respect to the Colorado notice.

56. Where, as here, a debt collector is mailing a letter to a consumer who has disputed the debt, it is especially problematic to imply to the unsophisticated consumer that she does not have the right to make a written request that the debt collector cease further communication because the dispute itself indicates that she may be unwilling or unable to pay the debt.

57. Plaintiff was confused and misled by Exhibit A.

58. The unsophisticated consumer would be confused and misled by Exhibit A.

59. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

60. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

61. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives

misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to

11

the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

12

64. 15 U.S.C. § 1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

65. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

66. 15 U.S.C. § 1692f generally prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."

## COUNT I – FDCPA

67. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68. Exhibit A states that it is being mailed "Re" Progressive debt associated with a "Claim No" ending in 5158-PZ.

69. Exhibit A also contains attached debt validation information that states that the debt is associated with an unpaid insurance premium balance.

70. The unsophisticated consumer would be confused and mislead as to whether the debt was associated with unpaid premiums, or was associated with an insurance claim, and was subject to subrogation or indemnification rights.

71. Upon information and belief, the debt is actually associated with unpaid insurance premiums, and has nothing to do with an actual insurance claim.

72. The reference in Exhibit A to the "Claim No" associated with the debt is confusing, deceptive, misleading, and unfair.

73. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## COUNT II – FDCPA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Exhibit A states that consumers have rights under the FDCPA that are similar to the rights referenced in the California notice.

76. Exhibit A states that consumers have rights under federal law that are similar to the rights referenced in the Massachusetts notice.

77. Exhibit A does not state that consumers have rights under federal law similar to the rights referenced in the Colorado notice, *i.e.,* the right to send a written request that the debt collector cease communication with the consumer.

78. Exhibit A implies to the unsophisticated consumer that she does not have the right to make a written request that the debt collector to ask that it cease communication.

79. Consumers have rights under the FDCPA, 15 U.S.C. § 1692c(c), that are substantively similar to the rights referenced in the Colorado notice in Exhibit A.

80. Expressly referencing federal law with respect to the California and Massachusetts notices but remaining silent as to the consumer's rights under federal law with respect to the Colorado notice is confusing, misleading, and unfair to the unsophisticated consumer.

81. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## CLASS ALLEGATIONS

82. Plaintiff brings this action on behalf of two Classes:

83. Class I ("Insurance Debt Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a debt collection letter, (c) seeking to collect a debt for personal,

14

family, or household purposes, (d) that was owed to an insurance company (e) where the letter referenced a "Claim No" that was assigned by RMS, (f) where the letter was mailed between September 5, 2017 and September 5, 2018, inclusive, (g) and was not returned by the postal service.

84. Class II ("Misleading State Notices Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a debt collection letter, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter included state disclosures in the form of the disclosures in Exhibit A, (e) and the letter was mailed between September 5, 2017 and September 5, 2018, inclusive, (f) and was not returned by the postal service.

85. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

86. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

87. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

90. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)  actual damages;

(b)  statutory damages;

(c)  attorneys' fees, litigation expenses and costs of suit; and

(d)  such other or further relief as the Court deems proper.

Dated:  September 5, 2018

          **ADEMI & O'REILLY, LLP**

By:  /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Frucher (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com